IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Criminal Case No. 13-cr-00468-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  SCOTT LOWE,

      Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No.

57], which petitioner Scott Lowe filed pro se.  On September 23, 2016, the Office of the

Federal Public Defender entered an appearance on behalf of petitioner [Docket No. 66].

Mr. Lowe challenges his sentence in this case pursuant to the Supreme Court's ruling in

*Johnson v. United States*, 135 S. Ct. 2551 (2015).

On February 11, 2014, Mr. Lowe pled guilty to one count of possession of a

firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1).  The presentence

investigation report [Docket No. 38] determined that Mr. Lowe had a base offense level

of 26 under U.S.S.G. § 2K2.1(a)(1) based on two previous felony convictions for crimes

of violence:  Burglary of an Occupied Dwelling from Hillsborough County, Florida and

Conspiracy to Commit Felony Menacing from Jefferson County, Colorado.[1]  The

_____

      [1]Mr. Lowe was sentenced under the 2013 Guidelines Manual.  All citations to the
Guidelines are to this version.

Probation Department determined that the defendant was in Criminal History Category IV.  As a result, the guideline range was 100 to 120 months imprisonment.  Mr. Lowe did not object to the calculation of his guideline range or to the Probation Department's conclusion that he had two convictions for crimes of violence.  The Court found that the guideline range was correct.  The government moved to reduce his sentence by 60% of the guideline range as calculated by the Court, making his guideline range for purposes of sentencing 40 to 48 months imprisonment.  The Court granted the government's motion and sentenced Mr. Lowe to 48 months imprisonment on August 22, 2014.  Mr. Lowe did not appeal the sentence.

Mr. Lowe claims that, given the invalidation of the residual clause in § 4B1.2, neither his Florida burglary conviction nor his Colorado conspiracy to commit felony menacing conviction can be considered a "crime of violence" and, as a result, his total offense level under U.S.S.G. § 2K2.1(a)(1) should have been six levels less.  Docket No. 68 at 2.  With a criminal history category of IV, Mr. Lowe maintains that his guideline range before the government's motion was taken into account should have been 57 to 71 months imprisonment.

The United States opposes Mr. Lowe's § 2255 petition on both procedural and substantive grounds.

### A.  Procedural Defenses

#### 1.  Timeliness

The United States argues that Mr. Lowe's motion is untimely pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings, which requires that such motions

usually be filed within one year of the date on which the judgment of conviction entered. 28 U.S.C. § 2255(f)(1).  Judgment entered on August 26, 2014.  Docket No. 48.  Mr. Lowe filed his motion on May 5, 2016, over one year after the date of the judgment. The government also argues that, since *Johnson* has not been made retroactively applicable to cases on collateral review, 28 U.S.C. § 2255(f)(3) does not apply.

Section 2255(f)(3) states that a motion under § 2255 may also be timely if filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  Mr. Lowe argues that, since his motion is based on *Johnson* and because *Johnson* was decided on June 26, 2015, his motion is timely because it was filed within one year of *Johnson*.  Docket No. 68 at 3.  In support of his argument, Mr. Lowe argues that the Tenth Circuit has already extended the principle of *Johnson* to the identically worded residual clause of U.S.S.G. § 4B1.2.  See *United States v. Madrid*, 805 F.3d 1204, 1211 (10th Cir. 2015).  And, despite the fact that neither the Tenth Circuit nor the Supreme Court has ruled on whether the principle of *Johnson* applies retroactively on collateral review to sentences determined pursuant to § 4B1.2, Mr. Lowe argues that the retroactivity analysis of *Welch v. United States*, 136 S. Ct. 1257 (2016), should extend to § 4B1.2.  Docket No. 68 at 6-7.

The Court agrees with Mr. Lowe that the rule of *Johnson* is retroactively applicable to his case.  As a general matter, under *Teague v. Lane*, 489 U.S. 288, 310 (1989), "new constitutional rules of criminal procedure will not be applicable to those

3

cases which have become final before the new rules are announced." There are two recognized exceptions. New "watershed rules of criminal procedure," which are procedural rules "implicating the fundamental fairness and accuracy of the criminal proceeding," *Saffle v Parks*, 494 U.S. 484, 495 (1990), and new "substantive" rules generally apply retroactively. *Teague, 489 U.S.* at 307, 311; *see generally Welch*, 136 S. Ct. at 1264. A rule is substantive rather than procedural "if it alters the range of conduct or the class of persons that the law punishes." *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004). Procedural rules, on the other hand, "regulate only the *manner of determining* the defendant's culpability." *Id*. (emphasis in original). In *Welch*, the Supreme Court determined that the rule of *Johnson* was substantive and not procedural, noting that "[b]y striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the Armed Career Criminal Act, altering 'the range of conduct or the class of persons that the [Act] punishes.'" 136 S. Ct. at 1265 (quoting *Schriro*, 542 U.S. at 353). The Court concludes that invalidating the residual clause in § 4B1.2 had a comparable effect. *Cf. In re Hubbard*, 825 F.3d 225, 234 (4th Cir. 2016) ("striking down the residual clause embodied in [18 U.S.C.] § 16(b) . . . would "alter[ ] the range of conduct or the class of persons that the [Sentencing Guidelines] punishes"). Although the United States argues that "an erroneous application of the guidelines does not alter the permissible statutory sentencing range" and "does not authorize an otherwise-inapplicable mandatory minimum or produce a higher-than-otherwise-applicable statutory maximum, as in true with *Johnson* error under the ACCA," Docket No. 63 at 7, that rationale was undercut by *Madrid*. The court there

held that, not only were the Guidelines the beginning of all sentencing determinations, but noted that the Supreme Court has held that the Guidelines are subject to constitutional challenge "notwithstanding the fact that sentencing courts possess discretion to deviate from the recommended sentencing range." 805 F.3d at 1211, quoting *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013).  The Court finds that Mr. Lowe's motion is timely pursuant to § 2255(f)(3).

### 2.  Mr. Lowe's Failure to File a Direct Appeal

The United States argues that, because Mr. Lowe failed to file a direct appeal challenging the enhancement of his sentence due to his convictions for "crimes of violence," he is barred from raising the issue in a § 2255 motion unless he can show (1) cause excusing his procedural default and actual prejudice resulting from the errors of which he complains or (2) that a fundamental miscarriage of justice will occur if his claim is not addressed.  See Docket No. 63 (citing *United States v. McGaughy*, 670 F.3d 1149, 1159 (10th Cir. 2012)).

The Court finds that Mr. Lowe has shown cause under the first exception. Before *Johnson*, any argument by Mr. Lowe that the residual clause of § 4B1.2 was unconstitutional would have been precluded by *Sykes v. United States*, 564 U.S. 1, 15 (2011), which upheld the constitutionality of such language.  Under these circumstances, a defendant's failure to make the claim on appeal is "sufficiently excusable to satisfy the cause requirement." *Reed v. Ross*, 468 U.S. 1, 17 (1984). Second, the Court finds that Mr. Lowe has satisfied the "actual prejudice" requirement. Prejudice is shown when there is a reasonable probability that the result of the

5

sentencing would have been different without the error to which the petitioner objected. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).  As noted in *Molina-Martinez v. United States*, 578 U.S. ----, 136 S. Ct. 1338, 1345 (2016), "[w]hen a defendant is sentenced under an incorrect Guidelines range – whether or not the defendant's ultimate sentence falls within the correct range – the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error."  The United States does not argue otherwise.

### B. Substantive Defenses

The United States argues that, even if the Court reaches the merits of Mr. Lowe's arguments, there is no *Johnson* error because Mr. Lowe's two felony convictions are "crimes of violence" under the "elements" clause of § 4B1.2.

As a preliminary matter, the government claims that Mr. Lowe cannot show that the Court relied on the residual clause during sentencing and therefore no *Johnson* error occurred.  Docket No. 63 at 12, 16.  In response, Mr. Lowe argues that prejudicial *Johnson* error can be shown if the record is unclear as to which clause of § 4B1.2 the Court relied upon.  Docket No. 68 at 14.  In *United States v. Mims*, 2017 WL 477091, at *3 (D. Kan. Feb. 6, 2017), the court concluded that a petitioner challenging his sentence under *Johnson* on collateral review need only show that "the court may have relied on the residual clause in applying the enhancement."  The Court agrees with the analysis in *Mims*.  Having reviewed the transcript of the sentencing hearing [Docket No. 61] and the presentence investigation report [Docket No. 38], the Court finds that the record is silent as to whether the Court relied on the residual clause in sentencing Mr. Lowe.  The

fact that the sentencing record is unclear about whether the Court classified Mr. Lowe's conspiracy and burglary convictions as crimes of violence under the residual clause does not bar Mr. Lowe's ability to challenge them under *Johnson* on collateral review.

### 1. Conspiracy to Commit Felony Menacing

On June 27, 2011, Mr. Lowe was convicted of Menacing Felony - Real/Simulated Weapon - Conspiracy in violation of Colorado Revised Statute § 18-3-206.  Docket No. 38 at 9.  A person "commits the crime of felony menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury."  Colo. Rev. Stat. § 18-3-206.  Menacing is a felony if committed "(a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or (b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon."  *Id.*  In *United States v. Armijo*, 651 F.3d 1226, 1230-33 (10th Cir. 2011), the Tenth Circuit held that a conviction for felony menacing under Colorado law categorically qualifies as a crime of violence under § 4B1.2(a)(1).  As a result, Mr. Lowe agrees that, had he been convicted of felony menacing, that crime would be properly considered a crime of violence.  Docket No. 68 at 18.  However, Mr. Lowe was not convicted of felony menacing, but rather of conspiracy to commit felony menacing. Docket No. 38 at 9.

Under *Madrid*, 805 F.3d at 1211-12, the residual clause of § 4B1.2 cannot be used to categorize Mr. Lowe's conspiracy conviction as a "crime of violence." Moreover, the United States does not argue that conspiracy to commit felony menacing

is a "crime of violence" under the elements clause or an enumerated offense under § 4B1.2 itself.  Rather, the United States argues that, under application note 1 to § 4B1.2, conspiracy to commit a crime of violence is a crime of violence.  U.S.S.G. § 4B1.2, cmt. n.1 ("'Crime of violence' . . . include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.").

In order for application note 1 of § 4B1.2 to have the effect of classifying conspiracy to commit menacing as a crime of violence, the Court must consider whether it is consistent with the Guideline it interprets.  *See Armijo*, 651 F.3d at 1236-37 (rejecting government's reading of application note 1 to include non-intentional crimes since that interpretation was "utterly inconsistent with the language of § 4B1.2(a)"); *United States v. McConnell*, 605 F.3d 822, 824 (10th Cir. 2010) (holding that commentary to the Guidelines is not authoritative if it is inconsistent with the Guideline it purports to interpret); *see also United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) ("the application notes are *interpretations of*, not *additions to*, the Guidelines themselves; an application note has no *independent* force") (emphasis in original).

Application note 1 to U.S.S.G. § 2K2.1 adopts the definition of the term "crime of violence" found in U.S.S.G. § 4B1.2(a) and application note 1 to that section.  Under § 4B1.2(a), a crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person of another."  The Tenth Circuit has interpreted "physical force" as "violent force, or force capable of causing physical pain or injury to another person."  *United States v. Harris*, 844 F.3d 1260, 1266 (10th Cir. 2017).  The issue then becomes what is the minimum force required by Colorado law

8

for the crime of conspiracy to commit felony menacing and whether that force

categorically fits the definition of physical force.  *Id*. at 1264, citing *Moncrieffe v. Holder*,

133 S. Ct. 1678, 1684 (2013); *Descamps v. United States*, 133 S. Ct. 2276, 2283

(2013) (categorical approach focuses on the elements of the crime rather than the

underlying facts).

In *United States v. Fell*, 511 F.3d 1035 (10th Cir. 2007), the Tenth Circuit

considered whether a Colorado conviction for conspiracy to commit second degree

burglary was a "violent felony" under the Armed Career Criminal Act, 18

U.S.C. § 924(e)(2)(B).  Colorado defined conspiracy as follows:

> A person commits conspiracy to commit a crime if, with the intent to
> promote or facilitate its commission, he agrees with another person or
> persons that they, or one or more of them, will engage in conduct which
> constitutes a crime or an attempt to commit a crime, or he agrees to aid
> the other person or persons in the planning or commission of a crime or of
> an attempt to commit such crime.

Colo. Rev. Stat. § 18-2-201(1).  The court noted that the conspiracy statute also

specifically provided that "[n]o person may be convicted of conspiracy to commit a

crime, unless an overt act in pursuance of that conspiracy is proved to have been done

by him or by a person with whom he conspired."  Colo. Rev. Stat. § 18-2-201(2); see

*also People v. Schruder*, 735 P.2d 905, 907 (Colo. App. 1986) ("An overt act in

furtherance of a conspiracy is required for conviction of conspiracy.").  The Colorado

Supreme Court Committee on Criminal Jury Instructions recommended the use of the

following definition of overt act:

> "Overt act" means any act knowingly committed by one of
> the conspirators, in an effort or effect to accomplish some object
> or purpose of the conspiracy. The overt act need not be criminal in
> nature, if conspired separately and apart from the conspiracy. It must,

9

however, be an act which follows and tends toward accomplishment
of a plan or scheme, and must be knowingly done in furtherance
of some object or purpose of the conspiracy charged in the
information.

Colo. Jury Instr., Criminal 8(1) Definitions (1993).  Based on this understanding of an

overt act under Colorado law, the court concluded that "[t]he recommended definition of

the term 'overt act' clarifies it is not invariably an illegal act; it can be wholly lawful if

committed apart from the conspiracy." *Fell*, 511 F.3d at 1041.  The court dismissed the

possibility that a conviction for conspiracy to commit second degree burglary met the

elements clause: "Because Colorado law does not require proof of the use, attempted

use, or threatened use of physical force to sustain a conviction for conspiracy to commit

second degree burglary, Fell's prior conviction does not qualify as a violent felony

pursuant to § 924(e)(2)(B)(i)." *Id.* at 1037.  Moreover, the court did not find that such

conviction even qualified as a violent crime under the (now invalidated) residual clause:

"[M]any overt acts sufficient to sustain a Colorado conspiracy conviction create no risk

of a violent confrontation between the defendant and an individual interacting with the

conspirator while the overt act is being committed." *Id.* at 1044.

The Court has not found any Colorado cases that suggest that Colorado law

regarding conspiracy has changed since *Fell* was decided.[2]  The Court has also not

---

[2]The Committee on Criminal Jury Instructions, at the time of Mr. Lowe's
menacing conviction, recommended somewhat different language regarding the
meaning of an "overt act":

"Overt Act" means any act knowingly committed by one of the
conspirators, in an effort to accomplish some object or purpose of the
conspiracy.  The overt act need not be criminal in nature if committed
separately and apart from the conspiracy.  It must, however, be an act
that tends to accomplish the plan or scheme, and must be knowingly done

found any Colorado cases that hold that a conspiracy to commit felony menacing must be based on an overt act that is more than merely preparatory to the act of menacing itself.  Thus, because the Court must presume that Mr. Lowe's conviction rested on nothing more than the least of the acts criminalized, *Moncrieffe*, 133 S. Ct. at 1684, and because a conviction for conspiracy to commit felony menacing could be based on preparatory conduct involving no application of force whatsoever, much less force capable of causing physical pain or injury to another person, the Court finds that application note 1, insofar as it includes conspiracy to commit felony menacing, is inconsistent with § 4B1.2(a)(1).[3] The Court therefore disagrees with the basis on which the United States claims that Mr. Lowe's menacing conviction was properly used to enhance his sentence.  The Court agrees with Mr. Lowe that his Colorado conspiracy to commit felony menacing conviction is not a crime of violence under § 2K2.1(a)(1).

## 2.  Florida Conviction for Burglary of an Occupied Dwelling

The presentence investigation report indicates that Mr. Lowe was convicted of Burglary of Occupied Dwelling in Hillsborough County, Florida in 2006.  Docket No. 38

---

in furtherance of some object or purpose of the conspiracy charged in the information [indictment].

Colo. Jury Instr., Criminal G2:02 Conspiracy

The Court finds that these changes are not material to its conclusion regarding the classification of Mr. Lowe's conviction as a crime of violence.

[3] The government's reliance on *Madrid* as "conclusively resolv[ing] the question of whether the commentary's list of enumerated offenses is binding after Johnson," Docket No. 78 at 2, is misplaced.  Consistent with the cases cites above, *Madrid* noted that "[s]uch commentary is authoritative 'unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" 805 F.3d at 1208 n.3, quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993).

at 7.  This is one of the convictions that caused Mr. Lowe to receive a base offense level of 26 pursuant to § 2K2.1(a)(1).  *Id.* at 5.

Section 4B1.2(a)(2) lists "burglary of a dwelling" as an enumerated offense.[4] Under *Taylor v. United States*, 495 U.S. 575, 599 (1990), the Court uses the categorical approach to look at the statutory elements of the offense at issue to determine if it has the same elements as the generic enumerated Guideline crime.  If the statute sweeps more broadly than the generic crime, a conviction under that statute cannot be considered a "crime of violence."  *Descamps*, 133 S. Ct. at 2283.  However, a "state statute does not need to match the generic definition verbatim.  The Guideline enhancement applies so long as the statute 'corresponds in substance to the generic meaning.'"  *United States v. Rivera-Oros*, 590 F.3d 1123, 1133 (10th Cir. 2009), quoting *Taylor*, 495 U.S. at 599.

The Tenth Circuit has determined that, for purposes of defining the generic crime of "burglary of a dwelling" under the Guidelines, the term "dwelling" includes any "enclosed space that is used or intended for use as a human habitation."  *Rivera-Oros*, 590 F.3d at 1132.  Florida law defines "burglary" as "[e]ntering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter. . . ."  Fla. Stat. § 810.02(b).  Florida law defines a "dwelling" as "a building or conveyance of any kind . . . which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."  Fla. Stat. § 810.011(2).  In *James*

---

[4] Neither party claims that Mr. Lowe's burglary conviction falls under the force clause of § 4B1.2.

*v. United States*, 550 U.S. 192 (2007), overruled by *Johnson*, 135 S. Ct. at 2363, the

Supreme Court considered whether the defendant's conviction for attempted burglary of

a dwelling under Florida law was a violent felony under the Armed Career Criminal Act.

The Court noted that "the inclusion of curtilage takes Florida's underlying offense of

burglary outside the definition of 'generic burglary.'" *Id*. at 212.  More recently, the

Eleventh Circuit considered whether a conviction for second degree burglary of a

dwelling was a "crime of violence" under Guideline § 2L1.2(b)(1)(A)(ii), whose

commentary lists "burglary of a dwelling" as falling within its definition.  *United States v.

Garcia-Martinez*, 845 F.3d 1126, 1132 (11th Cir. 2017).  In determining the generic

definition of burglary of a dwelling under the Guideline, the court agreed with the

analysis of the Tenth Circuit in *Rivera-Oros* regarding the meaning of "dwelling." *Id*. at

1132.  When the court used that definition to compare the generic crime to Florida's

second degree burglary statute, the court held: "Florida's inclusion of curtilage in its

definition of dwelling makes its burglary of a dwelling offense non-generic.  Curtilage –

defined in Florida as an enclosure around a residence – is not categorically used or

intended for use as a human habitation, home or residence." *Id*. at 1133 (quotation

marks and citation omitted).  Similarly, the Court finds that the Florida statute's inclusion

of curtilage in the definition of dwelling means that the statute sweeps more broadly

than the generic crime and therefore a conviction for second degree burglary cannot be

considered a crime of violence under § 4B1.2.  *See Descamps*, 133 S. Ct. at 2283.

Thus, Mr. Lowe's conviction for burglary of a dwelling under Fla. Stat. § 810.02(b)

cannot be used to enhance his sentence under § 2K2.1(a)(1).

Wherefore, it is

**ORDERED** that defendant Scott Lowe's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Docket No.

57] is granted.  It is further

**ORDERED** that Mr. Lowe's sentence is vacated pending re-sentencing.  It is

further

**ORDERED** that counsel shall contact chambers to set an expedited sentencing

hearing.  It is further

**ORDERED** that the Probation Department shall prepare and file a revised

presentence investigation report approximately one week before the sentencing

hearing.  It is further

**ORDERED** that the United States' Motion to Stay Ruling [Docket No. 65] is

denied.  It is further

**ORDERED** that defendant's Motion to Withdraw the Record and Motion to

Appoint Counsel [Docket No. 62] and defendant's Motion to Expedite [Docket No. 82]

are denied as moot.

DATED March 2, 2017.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge